### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHICAGO CORNER, LLC,

Plaintiff,

v.

HARD LENS MEDIA, INC.,

Defendant.

Case No. 24-cv-00246

Judge Mary M. Rowland

### MEMORANDUM OPINION AND ORDER

Plaintiff Chicago Corner, LLC ("CC"), brought this action against Defendant Hard Lens Media, Inc. ("Hard Lens"), for copyright infringement, accounting, and declaratory relief. [17]. Before the Court now are Chicago Corner LLC's and HLM's cross motions for summary judgment. [77]; [78]. For the reasons stated herein, both motions are granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue

1

for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017); *see also Chagoya v. City of Chicago*, 992 F.3d 607, 615 (7th Cir. 2021). The Court treats the motions separately. *Marcatante v. City of Chicago*, 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND[1]

### A. Factual Background

Defendant Hard Lens Media ("HLM") is a social media news organization that reports on local news in the Chicagoland area through YouTube and other online platforms. [77-2] ¶ 1; [83-1] ¶ 1. Kit Cabello and Daniel Luepker are the sole owners and officers of HLM. [77-2] ¶ 2; [83-1] ¶ 2. In 2019, HLM created a YouTube channel titled "Chicago Corner." [77-2] ¶ 3; [83-1] ¶ 3. At the time the Chicago Corner YouTube was created, HLM through Cabello and Luepker owned the channel. [77-2] ¶ 3; [83-1] ¶ 3. HLM engaged only 1099 contractors and had no employees. [82-1] ¶ 8. Between 2019 to early April 2023, the Chicago Corner and HLM YouTube channels were cross-promoted at times. [77-2] ¶ 4; [83-1] ¶ 4. Chicago Corner LLC ("CC") is an Illinois limited liability company that came into existence on March 23, 2023 when Jerry Vasilatos filed articles of organization for CC with the Illinois Secretary of State. [77-2] ¶ 5; [83-1] ¶ 5. CC's current managing members are Vasilatos, Kira Macoun, and Edward Heller. [77-2] ¶ 5; [83-1] ¶ 5.

Before the incorporation of Chicago Corner as an LLC, Vasilatos, Macoun, and Heller all previously performed services for HLM and Chicago Corner. [77-2] ¶¶ 6–7, 10, 12; [83-1] ¶¶ 6–7, 10, 12. Between approximately April 2021 and March 3, 2023, Vasilatos acted as an "executive producer," which entailed creative consultation,

---

[1] The facts in this Background section are undisputed unless otherwise noted. The Court takes these facts from Defendant's Statement of Facts ("SOF") [77-2], Defendants' Response to Plaintiff's SOF [82-1], Plaintiff's Response to Defendants' SOF [83-1], and Plaintiff's Statement of Additional Facts [83-2], to which Defendants did not respond, and various exhibits the parties have submitted in connection with the parties' cross motions for summary judgment.

coordinating logistics, and production and editing of stories for HLM and Chicago Corner. [77-2] ¶¶ 6–7; [83-1] ¶¶ 6–7. The parties dispute whether Vasilatos was an employee or unpaid volunteer at HLM. *See, e.g.*, [77-2] ¶¶ 7–8; [83-1] ¶¶ 7–8. During the relevant time period, Heller worked at HLM as a "chat room" moderator, as a cohost on HLM's videos, and as a 1099 contractor maintaining HLM's websites, including Chicago Corner websites. [77-2] ¶ 10; [82-1] ¶¶ 3–4; [83-1] ¶ 10. Macoun began hosting HLM videos around 2018 or 2019. [77-2] ¶ 12; [83-1] ¶ 12. For her hosting role, Macoun received a $100 stipend, which was later increased to $400 and paid by 99 Perspectives, HLM's sister company owned exclusively by Luepker. [77-2] ¶ 12; [82-1] ¶ 5; [83-1] ¶ 12.

Vasilatos and Heller worked with others at HLM to create the Chicago Corner logo while engaged in other services for HLM. [77-2] ¶¶ 9, 11; [83-1] ¶¶ 9, 11. On January 12, 2023, Vasilatos filed an application with the United States Patent and Trademark Office seeking registration of the Chicago Corner logo. [77-2] ¶ 14; [83-1] ¶ 14. At the time the trademark application was filed, the Chicago Corner logo was being used on the Chicago Corner Hard Lens Media YouTube Channel. [83-1] ¶ 14. The trademark application was approved on February 13, 2024. [77-2] ¶ 14; [83-1] ¶ 14.

Plaintiff claims copyright infringement regarding four videos. [17] ¶ 6. The videos are:

- "*Chicago Corner: Chicago #M4M4ALL March for Medicare for All Highlights*," which was first published on July 26, 2021. [77-2] ¶ 16(D); [83-1] ¶ 16(D).

4

- *"Chicago Corner: 2023 Chicago Mayoral Race Petition Drop-Off Coverage,"* which was first published on November 23, 2022. [77-2] ¶ 17; [83-1] ¶ 17.

- *"Chicago Corner: Happy Holidaze to Chicago from Mayor Lori Lightfoot!,"* which was first published on December 25, 2022. [77-2] ¶ 18; [83-1] ¶ 18.

- *"Chicago Corner: Activists Rally Mayor for CHA Land, Ordinance Ends Subminimum Wage, Guest Joe Evans, Barbie & More,"* which was first published on July 21, 2023. [77-2] ¶ 19; [83-1] ¶ 19. HLM played portions of this video up until February 27, 2024 as incorporated into the HLM video titled "Exposed: Chicago Corner and Jerry Vasilatos." [77-2] ¶ 19(A), (C); [83-1] ¶ 19(A), (C).

The Chicago Corner logo was placed on each of the videos at issue. [77-2] ¶ 13; [83-1] ¶ 13. Vasilatos filed copyright applications for the first three of the at-issue videos on December 29, 2023 and the last video on December 30, 2023. [77-2] ¶¶ 16–19; [83-1] ¶¶ 16–19. Additionally, the copyright applications for the at-issue videos listed Chicago Corner LLC as the "Author" and the videos as "Work made for hire." [77-2] ¶¶ 16(B), 17(B), 18(B); [83-1] ¶¶ 16(B), 17(B), 18(B); [77-3] Defendant's SOF Exh. M at 257–59, Dec. 30, 2026 Copyright Application. On July 16, 2025, Vasilatos executed nunc pro tunc assignments for each of the at-issue videos to Chicago Corner LLC. [78-3] Plaintiff's SOF Exh. I at 576–600.

## B. Procedural Background

Chicago Corner initiated this litigation on January 10, 2024. [1]. After the Court dismissed the initial complaint without prejudice, Plaintiff filed an amended

5

complaint on September 11, 2024 with claims for copyright infringement, accounting, and declaratory relief. [17.] Hard Lens later brought an amended counterclaim against Chicago Corner LLC and Vasilatos seeking declaratory judgment and tortious interference with business. [26]. The Court dismissed the counterclaim. [53]. Before the Court now are Chicago Corner LLC's and HLM's cross motions for summary judgment. [77]; [78].

**ANALYSIS**

### I.  Count I – Copyright Infringement

To succeed on a copyright infringement claim, a plaintiff must show: (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Richardson v. Kharbouch*, 156 F.4th 849, 856 (7th Cir. 2025). CC contends it has satisfied these elements. *See generally* [78-1]. Indeed, there is no dispute the second element is met because each of the at-issue videos or a portion thereof streamed on HLM's platforms. *See* [77-2] ¶ 19(A); [83-1] ¶ 19(A); *see also* [78-3] Plaintiff's SOF Exh. A at 22–93. Nevertheless, HLM argues it is entitled to summary judgment as to all four videos at issue for two reasons. First, the copyright is not valid as to three of the videos at issue. [77-1] at 4–7. Second, the fourth video is protected by the Fair Use doctrine. *Id.* at 7–10.

### A.  Copyright Validity

As a general rule, subject to exceptions not germane to the instant matter, the Copyright Act mandates that a copyright holder register its copyright in a work with

the United States Copyright Office before initiating suit for infringement. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). Registrations containing inaccurate information are invalid if "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate" and "(B) the inaccuracy of the information, if known, would have caused the Registrar of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(A)–(B); *see also DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622 (7th Cir. 2013). HLM argues there are at least two misstatements on the registration applications for the at-issue videos: (1) the author—Chicago Corner LLC; and (2) whether the videos were works for hire. [77-1] at 4–7. HLM contends it cannot be accurate to list Chicago Corner LLC as the author because Chicago Corner LLC did not exist at the time the videos were published and that the videos were "made for hire" for HLM, not Chicago Corner LLC. *Id.* CC disputes the applications contain any inaccuracies because Vasilatos and Heller made the videos as volunteers for Chicago Corner and executed *nunc pro tunc* assignments assigning the videos to CC. [78-1] at 3–4. The Court agrees with Plaintiff.

### i. "Works Made For Hire"

Pursuant to the Copyright Act of 1976, copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Typically, the author is the party who actually creates the work by translating an idea into a fixed, tangible expression entitled to copyright protection. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102). "Works made for hire" (referred

7

herein as "works for hire") are the exception to the general rule. 17 U.S.C. § 102(b). If the work is for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. *Id.* The parties contest who are the authors of the videos. Defendant claims the videos were jointly authored by several individuals, including Luepker and Cabello, "for hire" for HLM. [82] at 7–11. Plaintiff claims Vasilatos and Heller are the sole authors. [78-1] at 1–2.

A work is "for hire" if it is either (1) "prepared by an employee within the scope of his or her employment" or (2) "specially ordered or commissioned for use . . . if the parties expressly agree in a written agreement signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. There is no dispute there is no written agreement signed by the parties that the at-issue videos were to be considered a work made for hire. [82-1] ¶¶ 6–7. Accordingly, the relevant inquiry is whether the at-issue videos were prepared "within the scope of [Vasilatos's and Heller's] employment" as contemplated by Section 101(1) of the Copyright Act.

In considering employer-employee relationships in the context of Section 101(1) works made for hire, the term "employee" is not limited to "formal, salaried employees." *See Reid*, 490 U.S. at 742 n. 8; *Gaiman v. McFarlane*, 360 F.3d 644, 650 (7th Cir. 2004) ("The work for hire concept isn't limited to formal employment."). Instead, the Supreme Court has instructed courts to examine the relationship in accordance with the principles of the general common law of agency when assessing whether a work is "for hire." *Reid*, 490 U.S. at 750–51. In determining whether a

8

company can claim ownership over a work authored by others depends on whether the relationship bears the indicia of a principal-agent relationship outlined by the multi-factor *Reid* test:

> (1) the hiring party's right to control the manner and means by which the product is accomplished . . . (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work was part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party.

*Id.* at 751–52 (citations omitted; numbering added). This list is non-exhaustive and no one factor is determinative. *Id.* at 752.

Vasilatos and Heller were not employees under the *Reid* test. Some of the factors weigh in favor of HLM. Both men worked with HLM and produced content for Chicago Corner for over two years. [77-2] ¶ 7; [83-1] ¶ 7; [78-3] Exh. G to Plaintiff's SOF at 516, Heller Dep. Tr. at 13:13–14:3; *see also Int'l Code Council, Inc. v. Nat'l Fire Prot. Ass'n, Inc.*, 2006 WL 850879, at *21 (N.D. Ill. Mar. 27, 2006) (finding three-and-a-half year relationship supported employee-employer relationship); *Aymes v. Bonelli*, 980 F.2d 857, 864 (2d Cir. 1992) (same for two year relationship). And Vasilatos's and Heller's work producing videos was part of HLM and Chicago Corner's regular business. [77-2] ¶ 1; [83-1] ¶ 1. Other factors—such as the skill required and HLM's role in hiring any assistants (who would be independent contractors or unpaid volunteers)—are inconclusive, largely due to lack of evidence in support of either

9

party. And the record is disputed as to whether Vasilatos and Heller used any HLM equipment when producing the videos. [82-1] ¶¶ 3, 17–18.

All of the remaining factors weigh strongly against finding an employment relationship. Critically, Vasilatos and Heller had complete control over the manner and means of producing the at-issue videos as well as deciding what videos to produce. For example, Cabello testified Vasilatos "could do whatever he wanted [at Chicago Corner]. He was volunteering his time. What he put in is what he got out. He was a volunteer." [78-3] Exh. D to Plaintiff's SOF at 183, Cabello Dep. Tr. at 71:7–14:3. The fact that Vasilatos and Heller were unpaid militates against concluding that they were HLM's employees, even in the broad *Reid* sense. [78-3] Exh. F to Plaintiff's SOF at 183, Luepker Dep. Tr. at 94:19–24. For the same reason, the fact that HLM neither provided any employee benefits to, nor withheld taxes from the Vasilatos or Heller supports the same conclusion. [78-3] Exh. F to Plaintiff's SOF at 183, Luepker Dep. Tr. at 94:19–24. Furthermore, Vasilatos and Heller controlled the logistics of their work: neither had fixed hours and they could work from where they chose. [82-1] ¶ 19. Therefore, HLM is not an author of the three at-issue videos by virtue of "work for hire" provisions of Section 101(1). HLM's only evidence to the contrary is the complaint Vasilatos filed with the Illinois Department of Labor stating he was an HLM employee during the relevant time period. [82] at 7–8. This evidence does not persuade the Court. Not only is it a complaint (hearsay) without any legal findings about Vasilatos's status, but it does not undermine any of the *Reid* test factors. Accordingly, the at-issue videos were not made "for hire" for HLM.

### ii. Joint Authors

Even if HLM is not an author via "work for hire," it could still be an author if its officers, Cabello and Luepker, are considered joint authors of the videos. "Joint authorship is a defense to copyright infringement." *Sullivan v. Flora, Inc.*, 936 F.3d 562, 574 (7th Cir. 2019) (citing *Janky v. Lake County Convention And Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009)). If two or more authors jointly created the work in question, then the creators hold undivided interests in the joint work and the underlying rights are shared and not exclusive to one or the other authors. *Id.* (citing 17 U.S.C. § 201(a) ("[t]he authors of a joint work are co-owners of copyright in the work"); *see also Janky*, 576 F.3d at 361 ("The benefits of co-authorship are therefore significant: each author may use or license the joint work."). Authors of even "relatively minor" contribution equally enjoy these benefits. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994).

A joint work is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. A joint work requires (1) intent to create a joint work; and (2) contribution of independently copyrightable material. *Janky*, 576 F.3d at 362 (citing *Erickson*, 13 F.3d at 1068, 1071). The intent prong focuses on the parties' intent to work together in the creation of a single product, not the collaborators' intent to recognize each other as co-authors for the purposes of copyright law. *Id.* (citing *Erickson*, 13 F.3d at 1068–69). As to the second element,

11

contributions generally must be more than "[i]deas, refinements, and suggestions." *Id.* (citing *Erickson*, 13 F.3d at 1072). *De minimis* contributions are insufficient. *Id.*

There is no evidence Luepker or Cabello or anyone else intended to be a joint author with Vasilatos and Heller at the time the first three at-issue videos were created. When examining this prong, courts consider evidence of a collaborative process among authors, *see, e.g.*, *RMR Home Sols. LLC v. Farris*, 2025 WL 3552368, at \*4 (N.D. Ill. Dec. 11, 2025) (finding ten years of email exchanges documenting suggestions that were incorporated into the at issue work showed an intent to create a joint work), an author's "considerable control" over the final product, *see, e.g.*, *Janky*, 576 F.3d at 362 (contrasting minor suggestions that left final decisions entirely another individual with demanded changes), and crediting or billing another person as co-author, *see e.g.*, *Erickson*, 13 F.3d at 1072 ("billing or credit may be evidence of intent to create a joint work") (citing *Childress v. Taylor*, 945 F.2d 500, 508 (2d Cir. 1991) (internal quotations omitted). Defendant presents no such evidence here. Instead, HLM contends the videos were jointly authored because they were produced for and aired on HLM's Chicago Corner channels, displayed the Chicago Corner logo, were produced and edited using HLM equipment, featured Luepker and Cabello acting as emcees at one of the filmed events, and produced with the assistance of an HLM intern as videographer. [82] at 9 (citing [77-2] ¶¶ 10–18). A reasonable jury could not conclude that Luepker and Cabello intended to create a joint work based on this record.

12

Nor could a reasonable jury conclude anyone other than Vasilatos or Heller contributed any independently copyrightable material. HLM submitted *no* evidence that Luepker and Cabello contributed even ideas or suggestions, which alone would be insufficient. *Cf. Janky*, 576 F.3d at 363 (joint author contributed "concrete expressions" that were "important not only to the final sound, but also to [the] commercial viability" of the song), *with Erickson*, 13 F.3d at 1072 (actors not joint authors because they "could not identify specific contributions that they had made to Ms. Erickson's works" and even if they could "the contributions . . . were not independently copyrightable"). Rather HLM rests on the same evidence it submitted in support of the first prong, which is no more availing here. Thus, any contributions of HLM, through Luepker and Cabello, did not change the overall intellectual conceptions of Vasilatos and Heller and HLM is not a joint author.

### iii. Nunc Pro Tunc Assignment

Having determined that Vasilatos and Heller were the sole authors of the at-issue videos, the Court turns to the question of the nunc pro tunc assignments. Like other property rights, copyrights can be transferred from an owner to another entity. 17 U.S.C. § 201(d). Pursuant to Section 204, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." On July 16, 2025, Vasilatos executed nunc pro tunc assignments for each of the at-issue videos to Chicago Corner LLC. [78-3] Plaintiff's SOF Exh. I at 576–600.

13

Plaintiff argues Vasilatos had the right to execute the assignments as the author of the videos and that the assignments cure any inaccuracies about the author on the copyright registrations. [78-1] at 4–5. In support of this argument, CC relies on *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003). After a jury trial resulted in a verdict for the plaintiff-corporation on a copyright infringement claim, the district court granted judgment as a matter of law reasoning the copyrights at issue were invalid since neither of the works were "for hire" (because the plaintiff-corporation did not exist at the time the works were created) and attempted assignment during trial was invalid without sufficiently reliable proof of a prior oral agreement. 329 F.3d at 590. The Seventh Circuit determined the "error on the registration [was] not fatal" and reversed on this issue for two independent reasons. *Id.* at 591. First, they determined there was sufficient evidence of an oral agreement to transfer ownership to the plaintiff-corporation, which was later memorialized via the nunc pro tunc assignment. *Id.* at 592. Second, the defendant lacked standing under Section 204 to challenge the assignment. *Id.* Quoting the Eleventh Circuit, the Seventh Circuit explained, "the chief purpose of section 204(a) . . . is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." *Id.* (quoting *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)). "Where there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit

14

for copyright infringement.'" *Id.* at 592–93 (quoting *Imperial Residential Design*, 70 F.3d at 99).

The facts are analogous here. Like in *Billy-Bob Teeth*, the copyright registration says the works were made for hire for a corporation that did not exist at the time of registration. And here there is no a dispute between Chicago Corner LLC, Vasilatos, or Heller regarding the assignment. As in *Billy-Bob Teeth*, the fact that Chicago Corner LLC did not exist at the time the content was created is not fatal. HLM lacks standing under Section 204 to challenge the written assignment. Accordingly, the nunc pro tunc assignments stand and the Court determines the statements are not inaccurate and the copyright registrations are valid.

In sum, the Court grants summary judgment in favor of Plaintiff Chicago Corner LLC on Count I, copyright infringement, with regards to the following videos: "*Chicago Corner: Chicago #M4M4ALL March for Medicare for All Highlights*," "*Chicago Corner: 2023 Chicago Mayoral Race Petition Drop-Off Coverage*," and "*Chicago Corner: Happy Holidaze to Chicago from Mayor Lori Lightfoot!.*"

### B. Fair Use Doctrine

Finally, the Court turns to the fourth video at issue: *"Chicago Corner: Activists Rally Mayor for CHA Land, Ordinance Ends Subminimum Wage,Guest Joe Evans, Barbie & More."* HLM included an approximate five minute excerpt of Plaintiff's video in the HLM video *"Exposed- Chicago Corner and Jerry Vasilatos."* HLM argues its use of *"Chicago Corner: Activists Rally Mayor for CHA Land, Ordinance Ends*

15

*Subminimum Wage,Guest Joe Evans, Barbie & More"* is protected by the Fair Use doctrine. [77-1] at 7–10.

Under 17 U.S.C. § 107, use of a copyrighted work "for purposes such as criticism, comment, news reporting . . . is not an infringement of copyright." One purpose of the fair use defense is to facilitate criticism of copyrighted works by enabling the critic to quote enough of the criticized work to make his criticisms intelligible. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 628 (7th Cir. 2003) ("Copyright should not be a means by which criticism is stifled with the backing of the courts."). When determining whether certain copying is fair use, courts must consider:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. These factors favor finding HLM's use of Chicago Corner LLC's video clip is protected by fair use.

As for the first factor, "[c]entral to determining the purpose and character of a work is whether the new work merely supersedes the original work, or instead adds something new with a further purpose or of a different character." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 693 (7th Cir. 2012) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). A copier need not transform the work for the copying to be fair use. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455 (1984). There is

16

no rule against creating duplicates in fair use. *Google*, 593 U.S. at 32–33; *Sony*, 464 U.S. at 448–51. The focus should be on the extent the "use at issue" differs from the "purpose and character" of the original. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023). "The larger the difference, the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely." *Id.* The purpose of HLM's video was to critique not only the content of the CC video, but to discuss the deteriorating business relationship between the parties, including their legal challenges. That HLM did not "analyze or comment on the news reporting, editing, visuals, narrative structure, or expressive content of Plaintiff's work" does not mean the work is not a critique. *See* [83] at 10. This factor weighs in favor of fair use. *Campbell*, 510 U.S. at 579 ("[P]arody, like other comment or criticism, may claim fair use under § 107."); *Brownmark Films*, 682 F.3d at 693 ("parodic use has obvious transformative value, which under § 107 is fair use").

The second fair use factor considers what type of work is being copied. "In general, fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207, 237 (1990). This is because there is a "greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985). Here, the nature of the CC video is more factual than creative and in accordance with the general rule thus weighs in favor of fair use.

The third factor analyzes whether the copied material comes from the "heart" of the work's creative expression or whether the copying is "central to a . . . valid

17

purpose." *Google*, 593 U.S. at 33; *compare Harper*, 471 U.S. at 566 (selective quotation of a memoir's "dramatic focal points" was not fair use) *with Sony*, 464 U.S. at 455–56 (taping a television program for later viewing was fair use). Here, HLM excerpted five minutes from a nearly three hour video and only excerpted what was necessary to critique and analyze. Thus, this factor weighs in favor of fair use.

The final factor examines the economic loss brought about by the copying, considering both "the amount but also the source of the loss." *Google*, 593 U.S. at 35. Copying which replaces or substitutes sales of the original work, much in the way that "nails are substitutes for pegs or screws" is less likely to be fair. *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 517 (7th Cir. 2002). Copying that supplements or displaces demand for the original work, such as a scathing review or biting parody, is likely fair. *Campbell*, 510 U.S. at 590–95. Given that the HLM video does not supersede the original, it follows that the final factor also favors fair use. Moreover, there is no evidence of lost profits.

There is no genuine dispute of fact that the weight of these four factors falls in favor of the application of fair use. In light of these factors and fair use's overarching goal of allowing proper uses when reasonably necessary, reasonable jury could find the HLM's use of Chicago Corner LLC's video was fair use. In sum, the Court grants summary judgment in favor of HLM on Count I with regard to the video titled, *"Chicago Corner: Activists Rally Mayor for CHA Land, Ordinance Ends Subminimum Wage,Guest Joe Evans, Barbie & More."*

## II.    Count II – Accounting

Under 17 U.S.C. § 504, one who infringes a copyright is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages." Subsection (b) of Section 504 provides the "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." The copyright owner is entitled to the greater of its actual damages or the infringer's profits. *Respect Inc. v. Comm. on Status of Women*, 821 F. Supp. 531, 532 (N.D. Ill. 1993). The infringer must present proof of gross revenue, deductible expenses, and elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b).

Here, CC is not seeking statutory damages. Thus, CC is entitled to an accounting of HLM's profits.

## III.    Conclusion

For the stated reasons, Plaintiff Chicago Corner LLC's motion for summary judgment is granted for its claims of copyright infringement as to the videos titled "*Chicago Corner: Chicago #M4M4ALL March for Medicare for All Highlights*," "*Chicago Corner: 2023 Chicago Mayoral Race Petition Drop-Off Coverage*," and "*Chicago Corner: Happy Holidaze to Chicago from Mayor Lori Lightfoot!*." Defendant HLM's motion for summary judgment is granted as to the video titled "*Chicago Corner: Activists Rally Mayor for CHA Land, Ordinance Ends Subminimum*

19

*Wage,Guest Joe Evans, Barbie & More."* In-person status set for July 22, 2026 at 10:15 AM. Parties should come prepared to discuss procedures for an accounting and any other relief, including declaratory judgment (Count III).

E N T E R:

Dated: June 22, 2026

MARY M. ROWLAND
United States District Judge

20